A. C. MEFFORD, APPELLEE AND CROSS-APPELLANT, v. WILSON CONCRETE COMPANY, APPELLANT AND CROSS-APPELLEE.

77 N. W. 2d 895

Filed July 13, 1956. No. 33925.

*Viren, Emmert & Hilmes, G. M. Gunderson,* and *Peterson, Smith, Peterson, Beckman & Wilson,* for appellant.

*J. Max Harding* and *Pilcher, Haney & Howard,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in two causes of action by A. C. Mefford, plaintiff and appellee, against Wilson Concrete Company, defendant and appellant. The first cause of action is to recover the difference between what the plaintiff received as a motor carrier holding a certificate as a common carrier for the transportation of sand and gravel from a pit located on the Platte River about two miles south and one-fourth mile east of Richfield, Nebraska, to the plant of the defendant about one mile south of Omaha, Nebraska, near U. S. Highway No. 75, and what he contends he was entitled to receive.

The second cause of action involves a like claim in favor of one John Sorensen which was assigned by Sorensen to the plaintiff. The two causes of action do not require further separate consideration in this opinion.

A jury was waived and the case was tried to the court. At the conclusion of the trial a judgment was rendered in favor of plaintiff on the two causes of action for $1,567.73. Thereafter the defendant filed a motion for new trial which was overruled. The plaintiff also filed

a motion for new trial which was likewise overruled. From the judgment and the order overruling the motion for new trial the defendant has appealed. The plaintiff cross-appealed.

The contention of the plaintiff as substantially declared by his petition and by computation is that from August 8, 1953, to December 28, 1953, as a common carrier, he transported sand and gravel between the pit described and the plant of the defendant in the amount of 4,277 yards for which he received from the defendant $2,780.66, the rate therefor being 65 cents a yard; that from January 1, 1954, to January 8, 1954, he transported 110 yards of sand and gravel for which he received $81.49, the rate therefor being 74 cents a yard; and that from October 25, 1953, to December 19, 1953, Sorensen, likewise a common carrier, transported sand and gravel between the two points in the amount of 2,188 yards for which he received $1,619.12, which was at the rate of 74 cents a yard. As to each cause of action the plaintiff contends that the proper tariff as fixed by the Nebraska State Railway Commission was 92 cents a yard instead of the rates paid. The difference as to the first cause of action is $1,173.89 and as to the second $393.84 or a total of $1,567.73. The judgment was for this amount.

The defendant has not disputed the amount of sand and gravel transported or the amount or rate of payment made therefor. The sole question in dispute when the case was presented to the district court was that of whether under the Nebraska State Railway Commission tariff the rates paid or the 92 cent rate was applicable.

In this court however a new question has been presented by the defendant. The defendant contends here that the district court had, and this court has, no jurisdiction over the subject matter of the action.

The theory advanced is that under law the fixation, classification, regulation, and interpretation of intrastate freight and passenger tariffs is a function of the Nebraska State Railway Commission and since involved

here is a dispute over tariffs resort may be had only to the commission for the resolution of the dispute. In support of the contention the defendant cites sections 75-208, 75-401, and 75-402, R. R. S. 1943.

Section 75-208, R. R. S. 1943, grants broad regulatory power, but it is to be observed that nothing appears directly or by implication to permit action to be taken against anyone not acting in the capacity of a carrier. The provision does not directly or by implication permit or allow a carrier to institute action before the commission against a shipper for the purpose of determining a dispute concerning rates.

In Central Bridge & Construction Co. v. Chicago & N. W. Ry. Co., 129 Neb. 726, 262 N. W. 852, this court upheld the right of a shipper to seek and obtain relief with reference to tariffs fixed by the commission. This case does not, and no other case in this state has been found which does permit or require a carrier to bring before the commission a shipper to have determined a disputed tariff.

Sections 75-401 and 75-402, R. R. S. 1943, attribute broad powers to the commission but among these is not contained the bringing of shippers before it for the purpose of adjudicating rate disputes.

The contention that the court does not have jurisdiction over the subject matter is without merit. This conclusion makes necessary a determination of the case upon the merits to the extent they are presented by the other assignments of error. By the assignments as a whole the defendant contends substantially that factually and legally there is no support for the judgment rendered.

This contention requires only the ascertainment, interpretation, and application of the tariff established for the transportation of sand and gravel between the points involved. There is no dispute as to the origin or destination of shipments, the quantity shipped, or the rate paid by the shipper.

The defendant contends that Item 6 (b) of Supplement

No. 2 to Official Highway Builders and General Contractors Tariff No. 4 is applicable. This item exacts a charge of 53 cents a ton or, converted to a yardage basis, a charge of 74 cents a yard. This rate was paid by the defendant for 110 yards of the amount involved in the first cause of action. The remainder of the yardage involved in this cause of action or 4,277 yards was paid for at the rate of 65 cents. The rate of 74 cents was paid for the yardage involved in the second cause of action. On the other hand the plaintiff contends that the schedule of yardage and mileage rates contained in Item 7 is applicable. The appropriate charge under this item would be 92 cents a yard. It was this rate that the district court accepted and adopted as the basis of the judgment rendered.

The determination must turn in the main upon the meaning of the words "from pits located on the Platte River south of Omaha."

The plaintiff contends that these words limit the point of origin for the purposes of Item 6 to pits directly south of Omaha and not to any pits west of a line directly south from the westernmost limits of the city of Omaha, which the parties agree was at the time Seventy-second Street. The pit from which these shipments came was west of such a line. The distance is not authentically shown but it cannot be great since the entire distance of the haul was 13 miles.

The defendant substantially contends that the words do not so limit the point of origin but that they apply to pits on the Platte River from which shipments come into Omaha from the south.

The conclusion reached herein is that the contention of the defendant must be accepted and that of the plaintiff must be rejected.

In the first place, the contention of the defendant is reasonable. If the commission had intended to limit the application in the manner contended for by the

plaintiff it could so easily have said so. This it failed to do.

Further it is apparent from the knowledge that the commission obviously had of the Platte River in its meandering circuit south and west of Omaha to its outlet into the Missouri River, and the introductory paragraph of Item 6, that its purpose was to provide rates applicable to pits on this entire segment of the river. This paragraph, to the extent necessary to set it out here, is as follows: "The rates for transportation of sand and gravel from pits located on the Platte River to points within the corporate limits of Omaha or at all directly intermediate points * * * including the wet concrete plant located at 76th and Dodge Street * * * shall be as follows: * * *." The point of delivery for the purposes of this case was clearly a directly intermediate point.

The pertinent parts of Item 6 are subsection (b) and the paragraph denoted Zone I, as follows: "(b) The rates for transportation of sand and gravel, minimum weight 12,000 pounds, from pits located on the Platte River south of Omaha to points and places within the corporate limits of Omaha shall be as follows: ZONE I Beginning at the south city limits to but not including Leavenworth Street, the rate shall be 53 cents a ton." Tons converted to yards causes the rate to Leavenworth Street to be 74 cents. This conversion rate appears to be accepted by the parties. It is 5 miles from the south city limits to Leavenworth Street.

The first paragraph of subsection (a) of Item 6, not directly involved but of pertinence in the interpretation of the tariff in question, is as follows: "(a) The rates for transportation of sand and gravel, minimum weight 12,000 pounds, from pits located on the Platte River west of Omaha to points and places within the corporate limits of Omaha and including the wet concrete plant at 76th and Dodge shall be as follows: * * *."

If the theory of the defendant is not to be accepted then notwithstanding the apparent intention of the com-

mission to establish tariffs for pits along the meandering course of the Platte River to the south and west of Omaha, it only established tariffs from an area bounded on the west by a line extending directly south from Seventy-second Street and an area bounded on the south by a line extending directly west from the south extremity of Omaha, thus leaving the area between these lines without any rate except the mileage rate contained in Item 7.

The language employed does not reasonably admit of such an interpretation. Further such an interpretation would place a much heavier burden upon transportation from without the line than upon transportation of identical character and quality from within. This becomes clearly apparent from a comparison of Item 6 (b), Zone I, with Item 7 and its schedule of rates. By this comparison it is demonstrated that a shipment from a pit just east of the line extending south from Seventy-second Street and 10 miles distant from the south line of Omaha would carry a rate of 53 cents a ton or 74 cents a yard to this line and 5 miles beyond whereas a shipment from a pit just west of the line and also 10 miles south of the south line of Omaha would carry a rate of 53 cents a ton or 74 cents a yard to this south line but it would also carry an additional rate of 21 cents a ton or 30 cents a yard for the additional 5 miles. This additional charge would be clearly discriminatory and could not be justified on any reasonable basis.

There is another reason, we think, why Item 7 must be regarded as inapplicable. It is observable that this item does not refer to sand and gravel from pits. It has reference to aggregates to be used for particular purposes. The statement is the following: "The rates for transportation of aggregates principally sand, gravel, crushed stone, earth, clay, soil binder, mineral filler, agricultural limestone and other similar materials used for construction and maintenance of highways, dams, general construction projects, soiling practices or any

other purpose in which the above named aggregates are used shall be as follows: * * *."

It is not to be assumed that the commission employed the term "aggregates" in any other than the usual and ordinary sense. Neither does the manner of use indicate that it was used in any other sense. The New Century Dictionary, p. 24, defines an aggregate as follows: "An assemblage of particulars; a collective mass or whole; a total; also, any hard material used in small fragments for mixing with mortar or cement to form concrete." In Webster's Dictionary (2d ed.), Unabridged, p. 49, it is defined as follows: "A mass, assemblage, or sum of particulars; as, a house is an *aggregate* of stone, brick, timber, etc. In an *aggregate* the particulars are less intimately mixed than in a *compound*."

Thus it appears that "aggregate" connotes a combination of materials. Adhering to this connotation as well as the language quoted it appears that the purpose of Item 7 was to establish a tariff on a mileage basis for the transportation of mixtures for uses named in the item, and that there is no indication that it was ever intended to apply to shipment of sand and gravel as such from pits on the Platte River to Omaha or directly intermediate points.

In this view it must be said that the plaintiff is entitled to recover nothing on his second cause of action and nothing on his first cause of action for the 110 yards transported from January 1, 1954, to January 8, 1954. He is entitled however to recover the difference between 65 cents and 74 cents a yard for the 4,277 yards transported from August 8, 1953, to December 28, 1953, or $384.93.

This conclusion renders unnecessary a consideration of the cross-appeal except to say that by the cross-appeal was presented the question of whether or not the plaintiff, if he was entitled to recover at all, was entitled to recover treble damages. In his petition he claimed treble damages on the ground that the difference between the

amount paid and the rate claimed amounted to a rebate. The conclusion arrived at fully disposes of this question except as to the $384.93.

It may not well be said that as to this amount any question of rebate was involved. This in the light of the record presented was obviously only an error in computation. It was not considered in the briefs but was discovered by analysis here on review.

The judgment of the district court in favor of plaintiff to the extent of $384.93 is affirmed. To the remaining extent it is reversed and the cause remanded with directions to render judgment in favor of the defendant.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

WENKE, J., concurs in the result only.